IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

**Tonya Michelle Romano**[1]                                                                         Plaintiff

**Cause No. 3: 12-CV-131-JTK**

**Carolyn W. Colvin, Acting Commissioner,**                                         Defendant
**Social Security Administration**

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

Tonya Michelle Romano seeks judicial review of the denial of her application for disability insurance benefits and supplemental security income. Romano last worked as a cashier for a convenience store.[2] She stopped working in 2005 due to morning sickness.[3] Since then, Romano lost custody of two children due to drug use.[4] Romano's drug use — primarily methamphetamine — culminated in a heart attack in May 2008.[5]

The following year, Romano applied for disability benefits.[6] Romano based disability on congestive heart failure caused by spasms in her blood vessels.[7] She identified

---

[1] Most of the record reflects a prior name: Tonya Michelle Ashley.

[2] SSA record at p. 186.

[3] *Id*. at p. 185.

[4] *Id*. at pp. 33-34 (testifying that her daughters — ages 5 and 6 — were taken away from her due to drug use).

[5] *Id*. at p. 415 (lab work positive for methamphetamine on day of heart attack).

[6] *Id*. at pp. 154 & 156.

[7] *Id*. at p. 185.

the date of the heart attack as her onset date.[8]  According to Romano, she became disabled at age 33.

**The Commissioner's decision**.[9]   After considering the application, the Commissioner's ALJ determined that although Romano had severe impairments — congestive heart failure, mild anxiety, and adjustment disorder[10] — Romano could do some light work.[11]  Because a vocational expert identified available work, the ALJ determined Roman was not disabled under the Social Security Act and denied the application.[12]

After the Commissioner's Appeals Council denied a request for review,[13] the ALJ's

---

[8]*See id*. at pp. 154 & 156 (alleging disability beginning on May 21, 2008) & p. 399 (summarizing medical treatment when Romano went into cardiac arrest on May 21, 2008 and brought back with one shock from a defibrillator).

[9]The unfavorable decision referred to an onset date of Jan. 15, 2006.  Romano's application reflects May 21, 2008.  The 2006 date likely applied to Romano's first application.  The first application was denied on Aug. 18, 2008.  *Id*. at p. 180.  The denial foreclosed disability benefits before that date.  The erroneous onset date set forth in the unfavorable decision does not bear on the result in this case.

[10]*Id*. at p. 14.

[11]*Id*. at p. 15 (reducing light work by the following: (1) stand/walk 1 to 2 hours without interruption; (2) walk 1 block at a time; (3) avoid work around extreme heat or cold, heavy chemicals, dust or fumes; (4) no work around microwaves or things that might affect a pacemaker; (5) no operating taxicabs, buses or constant driving; (6) simple, unskilled work or semi-skilled work; (7) understand, follow and remember concrete instructions; (8) superficial contact with the public; and (9) she can meet, greet, make change, give simple instructions and directions.

[12]*Id*. at p. 20.

[13]*Id*. at p. 1.

decision became a final decision for judicial review.[14] Romano filed this case to challenge the decision. In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[15]

**Record development**. Romano challenges the ALJ's development of the record.[16] She maintains the ALJ should have asked a treating physician for an opinion about her ability to work. She contends the ALJ should have developed the record about mental impairment.

The ALJ has a duty to fairly and fully develop the record as to the matters at issue.[17] Although the ALJ must develop the record fairly and fully, "the burden of persuasion to prove disability and demonstrate [residual functional capacity] remains on the claimant. The ALJ does not 'have to seek additional clarifying statements from a treating physician

---

[14]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that Commissioner's appeal procedure permits claimants to appeal only final decisions).

[15]*See* 42 U.S.C. § 405(g) (requiring district court to determine whether Commissioner's findings are supported by substantial evidence and whether Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[16]Docket entry # 11, pp. 12 & 15-16.

[17]*Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1973).

unless a crucial issue is undeveloped.'"[18]

The crucial issue in this case was the condition of Romano's heart. There was no reason to contact a treating physician because treatment records documented Romano's heart condition. The records show that Romano presented to the emergency room complaining about chest pain. She went into cardiac arrest and was brought back to life with a shock of a defibrillator.[19] Because she continued to have irregular heart rhythms, an implantable cardioverter-defibrillator (ICD) was placed in her chest.[20] Medications were prescribed to suppress coronary spasms.

After the placement of the ICD, Romano did not always comply with her medication therapy. Periodically, she presented to the emergency for complaints of chest pain. Ejection fraction rates were normal.[21] Chest xrays were negative.[22] Lab work was unremarkable.[23] These medical findings suggested no reason to contact a treating physician. The treatment records provided sufficient medical evidence to determine

---

[18]*Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (citation omitted).

[19]SSA record at p. 399.

[20]*Id*. at p. 407.

[21]*Id*. at p. 277 (55-60% on Mar. 7, 2009); p. 509 (60-65% on Aug. 29, 2009).

[22]*See, e.g., id*. at pp. 375 (June 3, 2008), 364 (July 23, 2008), 314 (Mar. 6, 2009) & 575 (Aug. 13, 2009).

[23]*See, e.g., id*. at pp. 344 (July 28, 2008), 509 (Aug. 29, 2009).

whether Romano was disabled.[24]

As for mental impairment, Romano did not base disability on mental impairment. She complained about short-term memory and fearing she may die.[25] She identified her primary problem as climbing stairs.[26] She testified that she received two months of mental health treatment for bipolar disorder in 1996, but quit because her psychiatrist's approach wasn't working.[27] She thought she was better and began using drugs. She denied mental health treatment since 1996.[28] Because this evidence was insufficient to alert the ALJ to the possibility of a severe mental impairment, the ALJ did not err in developing the record about mental impairment.[29]

---

[24]*Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) ("An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped."); *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (explaining that duty to fairly and fully develop the record require "re-contacting a treating physician for clarification of an opinion … only if a crucial issue is undeveloped.").

[25]SSA record at pp. 210-11. *See also id*. at pp. 35 & 68 (testifying that she had problems with memory since they shocked her back to life).

[26]*Id*. at p. 47.

[27]*Id*. at pp. 49-50 & 68-69.

[28]*Id*. at p. 69.

[29]*Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012) ("If sufficient evidence alerts the ALJ to the possibility of a severe mental impairment, the ALJ must further develop the record about mental impairments before ruling on the severity of the claimant's impairment(s).").

**Credibility**. Romano complains about the ALJ's assessment of her credibility.[30] She maintains the ALJ decided not to give her testimony significant weight as early as her hearing.

An ALJ has a duty to assess the claimant's credibility.[31] To assess Romano's credibility, the ALJ followed the required two-step process[32] and considered the required factors.[33] Thus, the question before the court is whether substantial evidence[34] supports the ALJ's credibility assessment.[35]

The ALJ relied on inconsistencies in discounting Romano's credibility; specifically,

---

[30]Docket entry # 11, pp. 16-18.

[31]*Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

[32]*See* SSR 96-7p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[33]In considering the credibility a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). *See* SSR 96-7p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[34]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").

[35]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that court must determine whether decision is supported by substantial evidence in the record as a whole).

(1) inconsistency between the medical evidence and the disabling level of alleged pain, (2) inconsistency between the medical evidence and the agency documentation, and (3) contradictory explanations during the hearing. "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole."[36] In this case, there were numerous inconsistencies in the evidence as a whole.

<u>Medical evidence and allegations of disabling pain</u>.  In an August 2009 pleading, Romano alleged that spasms in her blood vessels caused her heart to stop,[37] but on the same day, she went to an emergency room for chest pain and left without treatment.[38] Leaving the emergency room without treatment contradicted the contemporaneous allegation of disabling chest pain. The contradiction weighed against her credibility.

<u>Medical evidence and agency documentation</u>.  In a July 2009 disability report, Romano alleged disability based on coronary spasms,[39] but in August 2009, she told an emergency room physician that she had not taken medication prescribed for coronary spasms for two months.[40]  "An impairment which can be controlled by treatment or

---

[36]*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

[37]SSA record at p. 204 (pain report dated Aug. 18, 2009).

[38]*Id*. at p. 546 (emergency room visit on Aug. 18, 2009).

[39]*Id*. at p. 185.

[40]*Id*. at p. 570.

medication is not considered disabling."[41] Alleging disabling coronary spasms is inconsistent with medication noncompliance. The inconsistency weighed against Romano's credibility.

Hearing testimony. Romano reported in a function report that she did not drive because of seizures,[42] but she testified that she didn't have a driver's license due to drug use.[43] The inconsistency in Romano's explanations about why she does not drive weighed against her credibility.

The record contains other inconsistencies,[44] but the representative inconsistencies provided a sufficient basis for discounting Romano's testimony. The ALJ encouraged Romano to reflect on her prior statements and to testify truthfully, but Romano continued to contradict earlier statements. The ALJ did not err in evaluating credibility.

**Light work**. Romano contends substantial evidence does not support the determination that she can do some light work.[45] She complains particularly about the lack of a treating physician's opinion about her ability to work.

---

[41]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[42]SSA record at p. 208.

[43]*Id*. at p. 37.

[44]*See, e.g., id*. at p. 336 (reporting no use of methamphetamine for four months, but testing positive for meth); *id*. at pp. 35-37 & (first testifying that she used drugs for only a year and a half and then admitting a much longer use).

[45]Docket entry # 11, pp. 10-13.

"Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[46] For substantial evidence to exist in this case, a reasonable mind must find evidence adequate to show Romano can do some light work. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[47]

A reasonable mind would accept Romano's treatment records and the medical consultants' opinions as adequate to show Romano could do some light work. Treatment records reflect normal ejection fraction rates with the ICD. Normal rates supported light work. Two medical consultants reviewed the treatment records and opined that Romano can do light work.[48] This evidence is adequate to show Romano can do light work.

The ALJ, however, reduced light work based on Romano's complaints about walking and stair climbing,[49] the presence of the ICD, and pain from occasional angina. The ALJ also reduced light work to unskilled or low semi-skilled work, involving concrete instruction and superficial contact with others. Romano complains about the ALJ's failure

---

[46]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) (internal citation omitted).

[47]20 C.F.R. §§ 404.1567(b) & 416.967(b).

[48]SSA record at pp. 600 & 608.

[49]*Id.* at p. 210 (reporting that she can walk a block or two); p. 47 (identifying her biggest problem as stairs).

to explain the latter reduction,[50] but the ALJ articulated the reason during the hearing. The reduction was based on Romano's education and adjustment disorder.[51] There is adequate evidence to show Romano can so some light work.

**Hypothetical question**. Romano complains that the hypothetical question failed to include all of her impairments.[52] She maintains the question should have included an inability to lift, an inability to stand for six hours, a restriction on bending and climbing, weakness, shortness of breath, fatigue, and problems with reliability, concentration, and persistence.

> A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true. The hypothetical question must capture the concrete consequences of the claimant's deficiencies. However, the ALJ may exclude any alleged impairments that [he] has properly rejected as untrue or unsubstantiated.[53]

The omission of Romano's complaints flowed from the ALJ's evaluation of Romano's credibility. The ALJ admonished Romano about the importance of truthfulness and the role of credibility throughout the hearing, but Romano persisted in providing

---

[50]Docket entry # 11, p. 16.

[51]SSA record at p. 74.

[52]Docket entry # 11, pp. 13-14.

[53]*Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011) (internal quotations and citations omitted).

contradictory testimony. The ALJ properly excluded Romano's unsubstantiated complaints.

The ALJ included many other limitations in the hypothetical question.[54] Those limitations captured the concrete consequences of Romano's deficiencies. Even with all of the ALJ's restrictions, the vocational expert identified available work.[55] If work exists that the claimant can do, the claimant is not disabled under the Social Security Act.[56]

**Conclusion**. Substantial evidence supported the ALJ's decision denying Romano's application. The ALJ made no legal error. For these reasons, the court DENIES Romano's request for relief (docket entry # 2) and AFFIRMS the decision denying the application.

---

[54] SSA record at pp. 72-74 (requiring the following: (1) occasional climbing, stooping, crouching, kneeling and crawling due to mild to moderate pain from angina and presence of pace maker; (2) no balancing; (3) walking no more than one block at a time; (4) one to two hours of standing at one time; (5) no temperature extremes due to pacemaker and occasional angina; (6) no heavy chemicals, dust, or fumes; (7) no microwaves or other things that would affect a pacemaker; (8) no operating moving machinery or driving due to possible angina and seizures; (9) unskilled or low semi-skilled work with concrete instructions and superficial contact with others due to adjustment disorder and lower educational level).

[55] *Id*. at pp. 74-76 (identifying dispatcher and information clerk as representative light jobs and surveillance system monitor and order clerk as representative sedentary jobs).

[56] *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

It is so ordered this 12th day of August, 2013.

_____
United States Magistrate Judge